UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALFREDO'S FOREIGN CARS, INC., D/B/A LARCHMONT CHRYSLER JEEP DODGE, | Civil Action No.  22-10478 |
| Plaintiff, | |
| v. | |
| STELLANTIS US LLC F/K/A FCA US LLC, | |
| Defendant. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Preliminary Statement

1.     This action arises out of Stellantis US LLC f/k/a/ FCA US LLC's ("Stellantis") discriminatory pricing and allocation practices and illegal incentive programs, which have harmed and continue to harm Stellantis dealerships.

2.     Stellantis has implemented unlawful practices to choose winners and losers among its dealer network. To the winners, it gives favored treatment and secret discounts. The losers must compete against favored dealers without the benefit of special treatment and secret discounts.

3.     Before the recent supply chain disruptions that led to worldwide global inventory shortages, these favored dealers received special treatment through secret discounts and the use of bargain-basement brokers, who have become prevalent in the tri-state area.

4.     Now, during the largest inventory crunch the car industry has ever faced, Stellantis also chooses winners and losers through its discriminatory allocation system. Stellantis strips promised inventory from disfavored dealers and shifts that inventory to favored dealers, all with little to no explanation to the affected businesses. Stellantis has diverted "ready-to-ship" inventory

1

from disfavored dealers and replaced it with "not yet built" allocation, in order to keep the apparent amount of allocation equal, while in practice delaying receipt of saleable inventory by weeks or months.

5.      Plaintiff Alfredo's Foreign Cars, Inc., d/b/a Larchmont Chrysler Jeep Dodge ("Larchmont") is one of the losers under Stellantis's unlawful scheme.

6.      Larchmont is a decades-old, family-owned dealership in Westchester County. Larchmont has faced competition within its own market territory from what are effectively satellite sales locations of the high volume dealers, at prices that are so far below a dealer's cost they could not possibly be matched without taking substantial losses. While Larchmont played by the rules, other Stellantis dealers engaged in extensive brokering and got rewarded for it. Instead of recognizing the unlawfulness of the situation and intervening, Stellantis actually incentivized this behavior. Ultimately, Stellantis just cares how much inventory a dealer can move; but how that dealer is moving inventory, and whether that dealer is taking huge losses, is irrelevant to Stellantis. Now, during the inventory shortage, Stellantis continues this two-tiered scheme by allocating cars to its favored dealers and withholding cars from those on the outside.

7.      Stellantis's unsustainable race to the bottom is fueled by five things: (1) its illegal performance metric that has already been held to violate the Dealer Act; (2) its illegal "Variable Growth Program" (VGP), that created two-tiered pricing in New York, and was designed to boost those at the top and penalize those at the bottom; (3) drawing market territory to artificially reduce sales and volume objectives of favored dealers to ensure those dealers receive incentives and discounts; (4) secret price discounts and incentives to favored dealers to take on excess inventory and dispose of it through brokers; and (5) manually manipulating its allocation system to give more units to its favored dealers and punish its disfavored dealers.

8.      First, Stellantis's actions are facilitated by its illegal performance metric, called MSR (Minimum Sales Responsibility). In a prior administrative proceeding between the parties, the New York Department of Motor Vehicles determined that MSR is unlawful. *Alfredo's Foreign Cars, Inc. D/B/A Larchmont Chrysler Jeep Dodge v. Stellantis US LLC*, Case No. FMD 2019-01, *aff'd* Dkt. No. 44175, June 29, 2021 (DMV Appeals Board) ("Prior DMV Proceeding").

9.      Second, Stellantis's performance-driven wholesale discount program, VGP (when it was in effect) violated Sections 463(2)(g) and (aa) of the Dealer Act because it constituted impermissible price discrimination in favor of certain preferred dealers. If a dealer did not meet their VGP target, their inventory became $500-$600 more expensive per unit. Moreover, if a dealer's rolling performance on an MSR-related metric (MPL or Market Performance Level) was below average, their VGP sales objective went up. And if a dealer was outperforming expectations, their VGP sales objective went down. In other words, Stellantis made it easier for favored dealers to obtain VGP price discounts and harder for disfavored dealers to compete. It quickly became impossible for one of Stellantis's "have-not" dealers to dig themselves out of the hole.

10.     Third, as if VGP's unlawful price discrimination wasn't enough, Stellantis has given favored treatment to certain high-volume brokering dealers in nearby markets, including unfair and uneven allocation of extra units, secret incentives, and secret discounts for these dealers. Larchmont presented evidence of this practice in the Prior DMV Proceeding, including that of a former employee of a favored dealer that utilized brokers describing how that favored dealer negotiated secret discounts with Stellantis. In essence, favored dealers that compete with Larchmont have received better pricing, more popular vehicles, and subsidies from Stellantis that Larchmont has not received. These dealers take special meetings and make secret deals with

Stellantis executives in Michigan, securing inventory at volumes and on terms unavailable to other dealerships.

11.     Stellantis also gives its favored dealers an advantage over Larchmont by artificially lowering their sales objectives by creating "open points" with unassigned territory that benefits favored adjacent dealers by lowering their sales objectives.

12.     Moreover, the only adjustment Stellantis purports to make to account for brokering (called a "Slant") is fatally flawed, as the tribunal found in the Prior DMV Proceeding. Slants only adjust for unusual amounts of sales made in a dealer's market by non-adjacent dealers. However, Larchmont borders one of the most active brokering dealers in the State and Stellantis refuses to adjust for it. As a result, favored dealers that receive a slant have lower objectives while keeping Larchmont's objectives artificially high. Because of these higher objectives, Larchmont paid more for its vehicles than the preferred dealers did, in violation of the law.

13.     Finally, Stellantis claims to have a formulaic allocation system it trots out when it is challenged to prove how it is fair and equitable. The problem, however, is that Stellantis manipulates the system to benefit favored dealers and harm disfavored dealers. For example, Larchmont has had inventory allocation manually taken away. Built units have been replaced with unbuilt units that gum up Larchmont's allocation pipeline. In addition, upon information and belief, Stellantis maintains an unofficial pool of discretionary vehicles that are allocated only to favored dealers. Larchmont is not getting enough inventory to grow, and Stellantis is purposefully restricting Larchmont's inventory in order to starve it out.

14.     Stellantis's actions violate federal and state law, including the Robinson-Patman Act (15 U.S.C. § 13(a), (d), and (e)), and the New York Franchised Motor Vehicle Dealer Act (N.Y. Veh. & Traf. L. § 460 *et seq.*, the "Dealer Act") (§ 463(g), § 463(aa), and § 463(jj)). In

addition, Stellantis has violated the covenant of good faith and fair dealing in the parties' Dealer Agreement.

15. Larchmont has suffered overt price discrimination and economic injury-in-fact and has lost retail sales which derive from the price discounts at issue. As a remedy, Plaintiff seeks money damages from Stellantis and its attorney's fees and costs.

### Parties

16. Plaintiff Larchmont is a corporation organized under the laws of the State of New York with its principal place of business at 2533 Boston Post Road, Larchmont, New York 10538-3443. Larchmont is a "franchised motor vehicle dealer" as defined in § 462(7) of the Dealer Act.

17. Stellantis is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Auburn Hills, Michigan. Stellantis is a "franchisor" under § 462(8) of the Dealer Act.

### Jurisdiction and Venue

18. This Court has subject matter jurisdiction over all of Plaintiff's claims pursuant to 28 U.S.C. § 1332(a), in that the amount in controversy exceeds the sum or value of $75,000 and diversity of citizenship exists between Plaintiff and the Defendant.

19. This Court has subject matter jurisdiction over Plaintiff's claims under Count I below pursuant to 28 U.S.C. § 1337(a), because Plaintiff's claims under the Robinson-Patman Act arise under an Act of Congress regulating commerce and protecting trade and commerce against restraints.

20. This Court has subject matter jurisdiction over Plaintiff's claims under Count II below pursuant to 28 U.S.C. § 1367(a) because they are so related to Count I in that they form part of the same case or controversy and arise from the same set of operative facts.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the Plaintiff's claims have occurred in this district.

## THE DEALER ACT

22.     The legislative purpose behind the Dealer Act is to "regulate motor vehicle manufacturers, distributors and factory or distributor representatives and to regulate dealers of motor vehicles...in order to prevent frauds, impositions and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this state." Dealer Act § 460.

23.     The Dealer Act proscribes certain conduct by franchisors as unlawful and unfair business practices. The prohibitions of the Dealer Act govern "notwithstanding the terms of any franchise contract." Dealer Act § 463(2). In addition, the Dealer Act supplements, rather than supplants, any and all common law rights that motor vehicle dealers have, as shown by the language of the Dealer Act and the unambiguous legislative intent behind the Dealer Act.

24.     The Dealer Act prohibits certain acts by franchisors like Stellantis, including price discrimination and unfair incentive programs.

25.     § 463(2)(g) of the Dealer Act provides as follows:

> It shall be unlawful for any franchisor … [t]o sell or offer to sell any new motor vehicle to any franchised motor vehicle dealer at a lower price therefor than the actual price offered to any other franchised motor vehicle dealer for the same model vehicle similarly equipped or to utilize any device including, but not limited to, sales promotion plans or programs which result in such lesser actual price… This paragraph shall not be construed to prevent the offering of incentive programs or other discounts if such discounts are available to all franchised motor vehicle dealers in this state on a proportionately equal basis.

26.     In 2001, the New York Legislature amended the Dealer Act to expand its price discrimination protections to include all vehicles, parts, warranties or services sold by a franchisor to a franchised dealer:

> It shall be unlawful for any franchisor… [t]o sell directly to a franchised motor vehicle dealer… motor vehicles, parts, warranties, or services at a price that is lower than the price which the franchisor charges to all other franchised motor vehicle dealers….

Dealer Act § 463(2)(aa).

27.     The Dealer Act also requires that allocation of vehicles be done fairly and equitably:

> It shall be unlawful for any franchisor… [t]o utilize a discriminatory, unreasonable, arbitrary or unfair system of allocation of new motor vehicle inventory. A franchisor shall communicate its system of allocation in writing in a clear and concise manner to all same line-make dealers located in this state.

Dealer Act § 463(2)(jj).

28.     Nor can a manufacturer make its allocation system a mysterious black box—

Dealers have a right to know how cars are allocated:

> It shall be unlawful for any franchisor… [t]o refuse to disclose to any franchised motor vehicle dealer the manner and mode of distribution of vehicles in the franchised motor vehicle dealer's line make within the state, and an explanation of the allocation system, including the methodology used, in a clear and comprehensible form.

Dealer Act § 463(2)(kk).

29.     Finally, the Dealer Act creates a private right of action for injunctive relief and damages and provides for the award of attorney's fees:

> A franchised motor vehicle dealer who is or may be aggrieved by a violation of this article shall be entitled to sue for, and have, injunctive relief and damages in any court of the state having jurisdiction over the parties. In any such action or proceeding, the court may award necessary costs and disbursements plus a reasonable attorney's fee to any party.

Dealer Act § 469.

## THE ROBINSON-PATMAN ACT

30.     The Robinson-Patman Act was enacted in 1936 "to curb and prohibit all devices by which large buyers gained discriminatory preferences over smaller ones by virtue of their greater

purchasing power." *F.T.C. v. Fred Meyer, Inc.*, 390 U.S. 341, 349 (1968) (internal citation omitted).

31.     The Act "outlaws several specific practices connected with the sale of commodities which had been utilized by large buyers to secure from their suppliers preferences not generally available; among these were 'dummy' brokerage payments and disproportionate advertising and similar allowances." *Grand Union Co. v. F.T.C.*, 300 F.2d 92, 96-97 (2d Cir. 1962).

32. The Act provides, in relevant part:

> It shall be unlawful for any person engaged in commerce … to discriminate in price between different purchasers of commodities of like grade and quality, … where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination or with customers of either of them ….

15 U.S.C. § 13(a).

33.     The Act requires that "each purchaser be given an 'equal opportunity' by the seller to receive the benefit of higher or lower prices." *George Haug Co., Inc. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 140 (2d Cir. 1998).

34.      To establish secondary-line price discrimination under Section 13(a), "a plaintiff has the burden of establishing four facts: (1) that seller's sales were made in interstate commerce; (2) that the seller discriminated in price as between the two purchasers; (3) that the product or commodity sold to the competing purchasers was of the same grade and quality; and (4) that the price discrimination had a prohibited effect on competition." *Id.* at 141, citing *Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 556 (1990).

35.     In *FTC v. Morton Salt Co.*, a secondary-line price discrimination case, the Supreme Court determined that the Robinson-Patman Act was "especially concerned with protecting small

businesses" and that therefore Section 2(a) "was intended to justify a finding of injury to

competition by a showing of 'injury to the competitor victimized by the discrimination.'" 334 U.S.

37, 49 (1948) (quoting S. Rep. No. 1502, 74th Cong., 2d Sess. 4).

36.     Sections (d) and (e) of the Robinson-Patman Act provide as follows:

> (d) It shall be unlawful for any person engaged in commerce to pay or
> contract for the payment of anything of value to or for the benefit of a
> customer of such person in the course of such commerce as compensation
> or in consideration for any services or facilities furnished by or through such
> customer in connection with the processing, handling, sale, or offering for
> sale of any products or commodities manufactured, sold, or offered for sale
> by such person, unless such payment or consideration is available on
> proportionally equal terms to all other customers competing in the
> distribution of such products or commodities.
>
> (e) It shall be unlawful for any person to discriminate in favor of one
> purchaser against another purchaser or purchasers of a commodity bought
> for resale, with or without processing, by contracting to furnish or
> furnishing, or by contributing to the furnishing of, any services or facilities
> connected with the processing, handling, sale, or offering for sale of such
> commodity so purchased upon terms not accorded to all purchasers on
> proportionally equal terms.

15 U.S.C. §§ 13(d) and (e).

37.     Sections 13(d) and (e) were "designed to prohibit indirect price discrimination in

the form of advertising and other promotional allowances made available to purchasers on

disproportionate terms." *George Haug Co., Inc. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 144

(2d Cir. 1998).

38.     Sections 13(d) and (e) differ in that "in the former, the purchaser supplies the

services or facilities and the supplier repays the purchaser; in the latter, the seller supplies the

services and facilities for use of the customer in facilitating resales." (*Id.*).

39.     Pursuant to 15 U.S.C. § 15(a), "…[A]ny person who shall be injured in his business

or property by reason of anything forbidden in the antitrust laws may sue therefor in any district

court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

## FACTUAL ALLEGATIONS

40.     Larchmont owns and operates successful Stellantis franchises in the Village of Larchmont, New York.

41.     Larchmont is owned by Alfredo Gulla. Mr. Gulla has owned one or more Stellantis franchises since the 1960's.

42.     Larchmont is run day-to-day by his two daughters, Eleanor and Silvana Gulla, making it one of the few women-led dealerships in the industry.

43.     Larchmont has considerable experience selling and servicing Stellantis motor vehicles.

44.     Larchmont has invested millions of dollars in its facilities, and has made significant investments in its staff, advertising, and in providing outstanding service.

45.     Larchmont has been in complete compliance with the terms of its Dealer Agreement with Stellantis, and has received no notice of termination or non-renewal.

46.     Stellantis manufactures and/or distributes and sells, among other products, new and unused passenger cars and light duty trucks under the Chrysler, Jeep, Dodge, and Ram ("CJDR") brand names.

47.     Stellantis is engaged in interstate commerce in that it sells vehicles through a network of franchised dealers located throughout the United States.

48.     Larchmont is a franchised Stellantis dealer engaged in, among other things, the business of purchasing vehicles from Stellantis and reselling those vehicles primarily to retail

purchasers located in the New York area, although some of Larchmont's retail sales of vehicles are to residents of other states.

49.     Some or all of the vehicles that Larchmont purchases from Stellantis cross state lines between the time of their manufacture and their delivery to Larchmont.

50.     Larchmont's purchases of vehicles from Stellantis take place within the United States and are for resale within the United States.

51.     Stellantis also sells vehicles to other Stellantis dealers, including other CJDR dealers in New York that compete against Larchmont in reselling vehicles purchased from Stellantis.

52.     Some or all of the vehicles that Stellantis sells to competing dealers also cross state lines between the time of their manufacture and their delivery to the dealer.

53.     Stellantis's sales of vehicles to Larchmont and the competing dealers occur in the course of commerce.

54.     When Larchmont purchases a vehicle from Stellantis, it pays Stellantis an invoice price for the vehicle.

55.     Upon information and belief, Stellantis has offered secret below-invoice pricing to certain dealers (the "Preferred Dealers") that are doing large numbers of sales through brokers in the New York area. The Preferred Dealers include Eastchester Chrysler Jeep Dodge Ram ("Eastchester") and Riverdale Chrysler Jeep Dodge Ram ("Riverdale").

56.     Having purchased Stellantis vehicles at discriminatorily low prices, these Preferred Dealers can profitably sell those same vehicles at prices that undercut the non-favored dealers such as Larchmont.

57.     Larchmont submitted evidence of this practice in the Prior DMV Proceeding that was credited by that tribunal. The Tribunal heard a former employee of Eastchester and Riverdale explaining the secret discounts and how their pricing was consistent with the price lists Eastchester freely gave to brokers. These price lists offered new Stellantis vehicles at up to $2,000 or more below Eastchester's bottom line cost.

58.     Receiving $500-600 per car from VGP could not make up for this shortfall. At 100 or more units per month, losses would quickly rack up to over $1.5 million per year. Rather, on information and belief, this differential was made up by secret price discounts Stellantis offered to Favored Dealers.

59.     Through these sales, the Preferred Dealers also earned further discriminatory VGP bonuses.

60.     Dealers could earn VGP money if they achieved a specific number of sales.

61.     The target varied from dealership to dealership and is increased annually by a certain percentage arbitrarily decided by Stellantis.

62.     Dealers that failed to achieve a requisite "Market Performance Level," or MPL, have their objectives increased, by as much as 15%. Dealers that exceed their MPL have their objectives decreased by as much as 15%. The MPL is calculated in a manner very similar to the MSR metric found unlawful in the Prior DMV Proceeding. If a dealer did not meet this arbitrary, flawed sales expectation, they were penalized under VGP.

63.     There is a stairstep chart of percentages above or below target MPL and percentage increase or decrease of VGP, with an inverse correlation. The more above market expectation a dealer is, the fewer cars that dealer must sell in order to qualify for the VGP bonus.

64.     Dealers that achieved their VGP objective were essentially provided discounts on each and every new motor vehicle sale.

65.     In addition to VGP, Stellantis provided other vehicle discounts to certain of its dealers at various times.

66.     The Tribunal heard the former Eastchester employee stated in sum and substance that certain dealers, such as Eastchester, are getting special, secret discounts from Stellantis to facilitate brokering.

67.     Specifically, upon information and belief, one or more dealer principals of the Preferred Dealers secretly meet with Stellantis executives to negotiate lower prices than that normally available to other dealers. These extra, discriminatory discounts are only available to these select dealers (the "Secret Discount Program").

68.     Upon information and belief, Stellantis does so with the knowledge and intent to create backchannels of vehicle supply through automobile brokers at prices that non-Preferred Dealers are simply unable to match. This practice drives business to brokers and away from dealerships, except those Preferred Dealers with access to the lowest possible pricing.

69.     Stellantis provides unlawful assistance to Preferred Dealers in other ways.

70.     Stellantis calculates objectives for its dealers using statewide market share adjusted for segment popularity. Stellantis then applies this calculation to the dealer's assigned territory to determine its objectives for a host of standards, including the dealer's contractual performance under the Dealer Agreement ("MSR") and its sales objective under the VGP ("MPL").

71.     The basis of these metric calculations is the new vehicle registrations in a dealer's assigned market territory, which Stellantis calls a "Trade Zone."

72.     Stellantis unilaterally determines what territory comprises a dealer's Trade Zone and, therefore, unilaterally sets a dealer's MSR and MPL objectives.

73.     The New York State Department of Motor Vehicles has already held that MSR is unlawful under Section 463(2)(gg) of the Dealer Act.

74.     Notwithstanding that MSR is illegal, Stellantis provided wholesale discounts under the VGP based on the dealer's MSR objective (the "MSR Discount Program").

75.     Stellantis made it easier for Preferred Dealers to receive wholesale discounts under the MSR Discount Program and the VGP by artificially lowering their sales objectives in two distinct ways.

76.     The first way is by carving territory out of a dealer's Trade Zone and leaving it unassigned as "Open Points."

77.     A dealer that borders an Open Point benefits from artificially lower MSR and VGP objectives because its assigned market territory is artificially smaller.

78.     Larchmont has discovered that Stellantis has Open Points benefitting Preferred Dealers throughout the metropolitan New York City area, including Staten Island, Brooklyn and Rockland County.

79.     The second way Stellantis discriminates against Larchmont is through the use of Slants to adjust the dealer's MSR downward. A Slant is the only way Stellantis purports to adjust for certain market conditions like the prevalence of brokering.

80.     Stellantis will apply a slant only when sales into a dealer's Trade Zone from other non-adjacent Stellantis dealers reach a certain outlier threshold. Sales from adjacent dealers are not considered.

81.     However, in Larchmont's case, one of its adjacent dealers, Eastchester is, upon information and belief, a major player in the brokering market. And, because of its status as a Preferred Dealer, Eastchester is able to sell significant amounts of vehicles at discount, through brokers, to Larchmont's customers at discounts Larchmont cannot match. Stellantis actively encourages this situation through its VGP, Secret Discount Program, and MSR Discount Program, and refuses to even adjust for it.

82.     Larchmont requested a Slant from Stellantis, but Stellantis has refused to provide one. Instead, it continues to put Larchmont at a competitive disadvantage versus Preferred Dealers.

83.     This is not a level playing field. Stellantis has created an environment in which a decades-old, family-run dealership is facing its demise, through no fault of its own, because of Stellantis's use of the VGP, the Secret Discount Program, and the MSR Discount Program (together the "Illegal Discount Programs").

84.     Since the inventory shortage brought on by the disruption from the global coronavirus pandemic, Stellantis has found other ways to prop up Preferred Dealers and punish disfavored dealers.

85.     Larchmont has had dozens and dozens of units removed from its allocation, had built and ready to ship inventory replaced with unbuilt order slots, and has had its allocation cut to levels that are noncompetitive with other dealers in the market.

86.     Upon information and belief, each of these changes to Larchmont's allocation has been done in order to benefit a preferred dealer and to punish Larchmont for its successful DMV proceeding against Stellantis.

87.     In summer 2021, Larchmont had 38 vehicles removed from its allocation and given to another dealership. Larchmont asked how that allocation decision was made but was never provided the formula or process that led to it.

88.     In August 2021, Larchmont asked Stellantis why its inventory was cut by 20%. Larchmont also highlighted that orders for allocation by Larchmont are removed or never scheduled, and Larchmont is given later than normal delivery windows while competing dealerships get priority inventory. Stellantis had no satisfactory answers to these questions.

89.     In fall 2021, 22 units were canceled from Larchmont's allocation.

90.     In November 2021, 16 vehicles were removed from Larchmont's allocation without approval.

91.     Removed units that are replaced with "to be built inventory" or similar units further back in the pipeline still count towards Larchmont's days' supply, which sabotages Larchmont's ability to earn new allocation.

92.     Allocation issues continue to plague Larchmont into 2022, and, upon information and belief, Stellantis's goal is to starve Larchmont of inventory as retaliation for asserting its legal rights.

93.     Stellantis has knowingly created an uneven playing field for this women-led dealership.

## COUNT I – VIOLATION OF 15 U.S.C. § 13(a), (d), and/or (e)
## (ROBINSON-PATMAN ACT)

94.     Larchmont hereby restates and incorporates by reference each of the allegations set forth above as if fully rewritten herein.

95.     Stellantis has violated § 13(a) of the Robinson-Patman Act by selling motor vehicles to the Preferred Dealers at prices lower than that charged by Stellantis to Larchmont and other similarly situated dealers.

96.     Stellantis is a motor vehicle distributor engaged in the sale of Chrysler Dodge Jeep Ram motor vehicles in interstate commerce. The Chrysler Dodge Jeep Ram vehicles sold to Larchmont and its competitors are manufactured in Michigan and other states and transported across state lines to Larchmont and its competitors for resale to consumers.

97.     Stellantis has sold motor vehicles of like grade and quality in contemporaneous interstate sales at lower prices to the Preferred Dealers than the prices at which those motor vehicles are available to other, non-Preferred Dealers such as Larchmont. Since the Preferred Dealers have a lower acquisition cost, they can offer lower retail prices to the public. As a result, the non-Preferred Dealers are being forced to lose money, lose sales, or both.

98.     The effect of Stellantis's unlawful price discrimination has been substantially to lessen competition between and among Larchmont and the other Chrysler Dodge Jeep Ram dealers with which it competes.

99.     Stellantis's Illegal Discount Programs provide sales incentives to the Preferred Dealers that effectively reduce the purchase price of the vehicle to Stellantis's Preferred Dealers, who in turn are able to sell new Stellantis vehicles to retail customers at a substantially lower cost than Larchmont.

100.    The Preferred Dealers have used their pricing advantage to impair Larchmont's ability to compete by reducing their retail prices to a level that Larchmont cannot match.

101.    Stellantis covertly, unilaterally, and arbitrarily controls every aspect of qualification, if any, for acceptance into the Illegal Incentive Programs. Stellantis has covertly, arbitrarily and illegally excluded Larchmont from the Illegal Incentive Programs.

102.    Accordingly, the Illegal Discount Programs are secret and not functionally available to Larchmont. There is no functional availability for Larchmont to purchase new Stellantis vehicles at these same wholesale prices paid to Stellantis by the Preferred Dealers.

103.    The Preferred Dealers provide no service or savings to Stellantis that is not also provided in like-kind by Larchmont.

104.    The commodities at issue, motor vehicles, are finished and fully consumable products. Lowering the price for such finished commodities to the Preferred Dealers results, by definition, in loss of profits to Larchmont, which loses the direct benefit of the lower purchase price.

105.    The motor vehicles Stellantis sells across state lines to Larchmont and to the Preferred Dealers and to other Stellantis dealers that Larchmont competes against are of the same grade and quality. However, Larchmont pays a higher price to Stellantis for the same make and model of new Stellantis vehicles than the Preferred Dealers.

106.    Since Stellantis implemented the Illegal Discount Programs, there have been substantial sales of illegally discounted vehicles sold by the Preferred Dealers at illegally discounted prices, that, upon information and belief, resulted in the direct loss of sales by Larchmont and a corresponding increase in sales by the Preferred Dealers. The relevant product markets include the market for motor vehicles manufactured and sold by Stellantis to its franchised dealers and, in turn, sold by the dealers to end users.

107.    With respect to Larchmont's purchase of new vehicles from Stellantis, the relevant geographic market is an area approximately corresponding to the respective region, sales locality and/or metropolitan market that Stellantis has established in the Dealer Agreement for the sale of motor vehicles to its franchised dealers.

108.    For Larchmont, as sellers to consumers of new motor vehicles manufactured by Stellantis, the relevant geographic market is the area in, around, and surrounding the New York City metropolitan markets in which Larchmont expressly competes against the Preferred Dealers and others.

109.    Stellantis's Illegal Discount Programs favor Preferred Dealers and are direct attempts by Stellantis to choose "winners and losers" among its dealer body by putting its thumb on the scale for Preferred Dealers. The foregoing constitutes a prohibited effect on conduct of commerce and also eliminates any possibility that Stellantis's substantial price discounts are available, functionally or otherwise, to Larchmont.

110.    The Illegal Discount Programs include secret discounts that aren't available to Larchmont and substantially harm Larchmont because the profit margin on the sale of new Stellantis vehicles is small, and therefore any pricing advantage, like the Illegal Discount Programs, affects consumer choice in the market.

111.    Indeed, there is nothing Larchmont could do to qualify for the preferential pricing afforded to Preferred Dealers under the Illegal Discount Programs. Stellantis chooses which dealers get to participate in the Secret Incentive Program, and it chooses which dealers to help out by other means, such as Open Points and Slants. Whether Larchmont receives preferential treatment under either of the Illegal Discount Programs is entirely up to Stellantis and, in fact, Larchmont only learned of these programs through its own diligence and after commencing an

administrative proceeding against Stellantis challenging the use of MSR as a performance standard under Section 463(2)(gg) of the Dealer Act.

112.     In addition to Stellantis's discriminatory pricing, Stellantis has also violated § 13(a) of the Robinson-Patman Act through its Illegal Discount Programs.

113.     The conduct of Stellantis in devising and implementing the Illegal Discount Programs violates the Robinson-Patman Act, 15 U.S.C. § 13(a) and obstructs legitimate and lawful competition between same line-make Stellantis dealerships.

114.     As a direct result of Stellantis's violation of 15 U.S.C. § 13(a), Larchmont has sustained injury to its business and property in the form of, *inter alia*, lost retail sales of vehicles and related finance and insurance ("F&I") products, lost profits from vehicle sales, lost profits from resale of used vehicles which would have been taken in trade on the lost vehicle sales, loss of customer goodwill, lost potential future sales of vehicles to repeat customers, and lost profits from warranty and non-warranty sales of service and parts to vehicle owners who tend to have their vehicles serviced at the same dealership where they were purchased.

115.     To the extent the vehicle subsidies described above are determined to be advertising or promotional assistance or payments for services or facilities in connection with the resale of vehicles, instead of reductions in the net wholesale prices paid for the vehicles, such vehicle subsidies violate 15 U.S.C. §§ 13(d) and/or (e) of the Robinson-Patman Act because such vehicle subsidies are being provided to the Preferred Dealers without being made available to Larchmont on proportionally equal terms.

116.     As a direct result of Stellantis's violation of 15 U.S.C. §§ 13(d) and/or (e), Larchmont has sustained injury to its business and property in the form of, *inter alia*, lost retail sales of vehicles and related finance and insurance ("F&I") products, lost profits from vehicle

sales, lost profits from resale of used vehicles which would have been taken in trade on the lost

vehicle sales, loss of customer goodwill, lost potential future sales of vehicles to repeat customers,

and lost profits from warranty and non-warranty sales of service and parts to vehicles owners who

tend to have their vehicles serviced at the same dealership where they were purchased.

117.    As a direct and proximate result of the foregoing, Larchmont has suffered damages

in an amount to be determined at trial.

118.    By reason of the foregoing, Larchmont is entitled to an award of damages to be

determined at trial, plus treble damages under 15. U.S.C. § 15(a) as well as its costs and attorney's

fees for this litigation.

## COUNT II – VIOLATION OF §§ 463(2)(g) and (aa)
## (THE DEALER ACT)

119.    Larchmont hereby restates and incorporates by reference each of the allegations set

forth above as if fully rewritten herein.

120.    Stellantis has violated both §§ 463(2)(g) and (aa) of the Dealer Act by (i) selling

motor vehicles to the Preferred Dealerships at prices lower than that charged by Stellantis to

Larchmont and (ii) by offering to sell, or selling, new motor vehicles of the same model to the

Preferred Dealers at a lower price by means of an incentive program that is not available to

Larchmont on a proportionately equal basis.

121.    Through its discriminatory pricing as well as its Illegal Discount Programs

described above, Stellantis has violated §§ 463(2)(g) and (aa) of the Dealer Act by offering to sell,

or selling, new and pre-owned vehicles of the same model to the Preferred Dealers at a lower price

than that charged to Larchmont and by means of discounts that are not available to Larchmont on

a proportionately equal basis.

122.    Section 469(1) of the Dealer Act establishes a private right of action for violations of the Dealer Act, and Larchmont seeks damages caused by Stellantis's unlawful conduct in an amount to be determined at trial.

## COUNT III – VIOLATION OF §§ 463(2)(jj) & (kk)
## (THE DEALER ACT)

123.    Larchmont hereby restates and incorporates by reference each of the allegations set forth above as if fully rewritten herein.

124.    Stellantis has violated §§ 463(2)(jj) and (kk) of the Dealer Act by allocating a substantial number of vehicles through arbitrary, discriminatory, or unfair means, and by failing to disclose those means to Larchmont. Stellantis manually overrides the results of its allocation system in order to prop up Preferred Dealers and to punish disfavored dealers like Larchmont. When asked for information on the allocation system over the course of the past two years, Stellantis has stonewalled Larchmont at every turn.

125.    Section 463(2)(jj) of the Dealer Act prohibits manufacturers from "utiliz[ing] a discriminatory, unreasonable, arbitrary, or unfair system of allocation of new motor vehicle inventory."

126.    Section 463(2)(kk) of the Dealer Act prohibits manufacturers from refusing to disclose to any dealer "the manner and mode of distribution of vehicles" or "an explanation of the allocation system."

127.    Because Stellantis manually overrides the results of its allocation system to favor some dealers and punish others, Stellantis's allocation system is unreasonable, arbitrary, unfair, and discriminatory, and thus violates state law.

128.    Section 469(1) of the Dealer Act establishes a private right of action for violations of the Dealer Act, and Larchmont requests an award of damages caused by Stellantis's unlawful conduct in an amount to be determined at trial.

## COUNT IV – BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

129.    Larchmont hereby restates and incorporates by reference each of the allegations set forth above as if fully rewritten herein.

130.    Implicit in every New York contract is a covenant of good faith and fair dealing.

131.    This covenant applies even in instances where a party purportedly reserves the right to absolute discretion to act under the terms of the contract.

132.    Larchmont and Stellantis are parties to the Dealer Agreement, which sets forth the rights and obligations of the parties regarding Larchmont's sale and servicing of Stellantis motor vehicles.

133.    The Dealer Agreement is a valid and enforceable contract, and Larchmont has complied with it in all material respects.

134.    Stellantis has breached the implied covenant of good faith and fair dealing by, *inter alia*, (i) providing the Illegal Discount Programs to Preferred Dealers while withholding them from Larchmont; (ii) by refusing to make adjustments to Larchmont's MSR objectives and other objectives tied to MSR on account of rampant brokering facilitated by Preferred Dealers in Larchmont's market; and (iii) by giving Preferred Dealers better allocation of vehicles, withholding allocation from Larchmont, and in some cases, giving Larchmont's allocation to Preferred Dealers.

135.    As a direct and proximate result of the foregoing, Larchmont has suffered damages in an amount to be determined at trial.

**WHEREFORE**, Larchmont demands entry of a judgment against Stellantis:

A.    For an award of damages in an amount to be determined at trial.

B.    For treble damages, pursuant to 15 U.S.C. § 15(a) in an amount to be determined at trial.

C.    For an award of reasonable attorneys' fees, costs and disbursements incurred in connection with this action, in amounts to be determined as authorized by 15 U.S.C. § 15(a) and N.Y. Veh. & Traf. L. § 469(1) , and

D.    For such other and further relief in favor of Larchmont as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Larchmont hereby demands trial by jury on all issues so triable.

Dated: New York, New York
  December 12, 2022

ARENTFOX SCHIFF LLP

By:  /s/ Russell P. McRory
 Russell P. McRory
 Michael P. McMahan
 Daisy M. Sexton
 Charles A. Gallaer
 1301 Avenue of the Americas, Fl. 42
 New York, NY 10019
 (212) 484-3900
 *Attorneys for Plaintiff Alfredo's Foreign Cars,*
 *Inc. d/b/a Larchmont Chrysler Jeep Dodge*