UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALFREDO'S FOREIGN CARS, INC., *d/b/a*
LARCHMONT CHRYSLER JEEP DODGE,

        Plaintiff,

  v.

STELLANTIS US LLC *f/k/a* FCA US LLC,

        Defendant.

No. 22-CV-10478 (KMK)

OPINION & ORDER

Appearances:

Charles Andrew Gallaer, Esq.
Michael Palmer McMahan, Esq.
Shayshari Potter, Esq.
Russell Pries McRory, Esq.
Arnet Fox LLP
New York, NY
*Counsel for Plaintiff*

Blake Adam Gansborg, Esq.
John Streelman, Esq.
Mark T. Clouatre, Esq.
Nelson Mullins Riley & Scarborough LLP
Denver, CO
*Counsel for Defendant*

Mitchell Boyarsky, Esq.
Lisa Ann Herbert, Esq.
Nelson Mullins Riley & Scarborough LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

  Alfredo's Foreign Cars d/b/a Larchmont Chrysler Jeep Dodge ("Larchmont" or "Plaintiff") brings this Action against Stellanis, f/k/a FCA US LLC ("FCA" or "Defendant") for violations of the Robinson-Patman Act, 15 U.S.C. §§ 13 et seq., the New York Franchised Motor

Vehicle Dealer Act ("Dealer Act"), N.Y. Veh. & Traf. L. §§ 460 et seq., and for breach of the implied covenant of good faith and fair dealing. (*See generally* Compl. (Dkt. No. 1).) Before the Court is Defendant's Rule 12(b)(6) Motion To Dismiss. (Not. of Mot. (Dkt. No. 28).) For the reasons stated herein, Defendant's Motion is granted in part and denied in part.

## I. Background

### A. Factual Background

Unless otherwise stated, the following facts are taken from the Complaint and are assumed true for the purposes of resolving the instant Motion.

Plaintiff is a family-owned dealership in Westchester County and FCA is a Michigan-based franchisor. (Compl. ¶¶ 6, 17.) Plaintiff is part of FCA's dealer network through which it purchases FCA vehicle inventory. (*See id*. ¶ 2.)

#### 1. The Instant Case

In the midst of a supply crunch in the car industry, FCA began to discriminate among dealers in its network. (*Id*. ¶ 4.) Specifically, FCA began to offer below-invoice pricing to certain preferred dealers that were selling large numbers of cars through brokers in the New York area. (*Id*. ¶¶ 55–56.) That advantageous pricing allowed preferred dealers to undercut non-favored dealers, like Plaintiff, and rapidly boost their sales. (*See id*. ¶¶ 56, 59.) Those sales, in turn, drove better performance ratings.

FCA evaluates its dealers through a metric called Market Performance Level ("MPL"). In short, if a dealer meets or exceeds its MPL objective, it can more easily qualify for bonus compensation, and vice versa. (*Id*. ¶¶ 62–63.) Importantly, those targets are set unilaterally by FCA. (*Id*. ¶ 72.)

To lend preferred dealers a helping hand, FCA lowered the sales objectives of preferred dealers in two ways: first by artificially limiting their assigned market territory, (*id*. ¶ 77); and

second by changing certain assumptions about prevailing market conditions, (*id*. ¶ 79). Plaintiff requested similar dispensations from FCA but was denied. (*Id*. ¶ 82.) As a result, it has had dozens of units removed from its allocation throughout 2021 and 2022. (*Id*. ¶¶ 85–93.)

### 2. The DMV Proceeding

Plaintiff contends that the MPL metric and related discount programs are closely related to a different metric called Minimum Sales Responsibility ("MSR"). (*Id*. ¶ 9.) That metric was the subject of a prior administrative proceeding between the Parties before the New York Department of Motor Vehicles (the "DMV Proceeding").[1] In that proceeding, Plaintiff raised similar allegations, namely that through the MSR metric, FCA "encouraged unlawful brokering in Larchmont's market by giving favored treatment to its high-volume brokering dealers, including unfair and uneven allocation of extra units and secret incentive monies and better pricing for those dealers." (Decl. of Blake A. Gansborg in Supp. of Mot. ("Gansborg Decl."), Ex. A ("DMV Pet.") ¶ 1 (Dkt. No. 30-1).)[2] The DMV concluded that the MSR violated the Dealer Act, because it constituted an "arbitrary, unreasonable or unfair . . . standard for determining sales performance." (*See* Gansborg Decl., Ex. B ("DMV Appeal"), at 4 (Dkt. No.

---

[1] FCA previously attempted to remove the DMV Proceeding and this Court granted Plaintiff's motion to remand. *See Alfredo's Foreign Cars Inc. v. FCA US, LLC*, No. 19-CV-4026 (S.D.N.Y. Aug. 1, 2019).

[2] Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id*. And "[c]ourts may take judicial notice of public documents or documents of public record" in addition to "records of administrative bodies," such as government agencies. *Casey v. Odwalla, Inc*., 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018) (collecting cases).

30-2).) That judgment was affirmed on an administrative appeal, (*see generally id.*), but was not reviewed by a state court.

Here, Plaintiff alleges that FCA's discriminatory conduct related to the MPL metric and associated inventory decisions violates the Robinson-Patman Act, (Compl. ¶¶ 94–118), the Dealer Act, (*id.* ¶¶ 119–122), and constitutes a breach of the implied covenant of good faith and fair dealing, (*id.* ¶¶ 129–135).[3]

B.  Procedural History

Plaintiff commenced this Action on December 12, 2022.  (*See generally* Compl.)  On January 26, 2023, FCA filed a pre-motion letter in anticipation of filing the instant Motion.  (Dkt. No. 17.)  Plaintiff responded on February 9, 2023.  (Dkt. No. 21.)  The Court held a pre-motion conference on February 21, 2023, (*see* Dkt. (minute entry for Feb. 21, 2023)), after which it adopted a briefing schedule, (Order (Dkt. No. 27).  Pursuant to that schedule, FCA moved to dismiss on March 21, 2023.  (Not. of Mot.; Def's Mem. of Law in Supp. of Mot. ("Def's Mem.") (Dkt. No. 29); Gansborg Decl.)  Plaintiff responded on April 21, 2023, (Dkt. No. 31 ("Pl's Mem.")), and FCA replied on May 9, 2023, (Dkt. No. 35 ("Def's Reply")).

In an October 20, 2023, Order, the Court asked the Parties to submit supplemental briefing regarding the applicability of res judicata to state administrative judgments that have not been reviewed by a court.  (Dkt. No. 36.)  The Parties responded with supplemental briefs on November 3, 2023.  (Pl's Supp. Br. in Opp. ("Pl's Supp. Mem.") (Dkt. No. 37); Br. in Further Supp. of Mot. ("Def's Supp. Mem.") (Dkt. No. 38).)  And they each filed supplemental replies

---

[3] The Complaint states two Dealer Act claims.  (*See generally* Compl.)  Defendant seeks to dismiss the first Dealer Act claim (Count II) with its Motion and intends to answer the remaining claim (Count III).  (*See* Def's Mem. 1 n.1.)

4

on November 10, 2023.  (Pl's Resp. to Def's Supp. Br. ("Pl's Supp. Reply") (Dkt. No. 40); Supp. Resp. Br. ("Def's Supp. Reply") (Dkt. No. 39).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id*. (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id*. at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id*. at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id*.; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Protection Resources, Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

### B. Res Judicata

FCA argues that the DMV Proceeding is res judicata as to Plaintiff's Robinson-Patman Act, Dealer Act, and contract claims. (Def's Mem. 6–16.) But that position raises an antecedent question: what, if any, preclusive effect is this unreviewed state administrative judgment entitled to? For the reasons below, the Court concludes that the answer is "only some." Specifically, as a matter of federal common law, the DMV's judgment may apply to bar Plaintiff's state law claims but not its Robinson-Patman Act claim.

#### 1. Federal Common Law

To start, the judgments of state agencies do not necessarily have the same preclusive effect as the judgments of state courts. State proceedings are typically given preclusive effect in federal courts by way of 28 U.S.C. § 1738, which provides that "judicial proceedings" of a state "shall have the same full faith and credit in every court within the United States . . . as they have

by law or usage in the courts of such [s]tate." *K.C. v. Chappaqua Cent. Sch. Dist.*, No. 16-CV-3138, 2017 WL 2417019, at *6 (S.D.N.Y. June 2, 2017) (quoting *Chartier v. Marlin Mgmt., LLC*, 202 F.3d 89, 94 (2d Cir. 2000) (citing § 1738 as the basis for giving preclusive effect to judgments of courts in New York)). "[N]either arbitrations nor administrative adjudications," however, "are state-court judgments within the coverage of [§] 1738." *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005).

But that is not the end of the matter. Because § 1738 "antedates the development of administrative agencies it clearly does not represent a congressional determination that the decisions of state administrative agencies should not be given preclusive effect." *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 795 (1986). Instead, "[a]bsent specific statutory guidance from Congress, the preclusive effect of prior unreviewed state administrative decisions upon a subsequent suit in federal court is a matter of federal common law." *Leventhal v. Knapek*, 266 F.3d 64, 72–73 (2d Cir. 2001) (citing *Elliot*, 478 U.S. at 796–99). "When federal common law gives preclusive effect . . . to a state administrative determination, that prior determination has 'the same preclusive effect to which it would be entitled in the State's courts.'" *Id.* at 73 (quoting *Elliot*, 478 U.S. at 799); *Krasner v. City of New York*, No. 11-CV-2048, 2013 WL 5338558, at *11 n.9 (S.D.N.Y. Sept. 23, 2013) (same).

FCA's argument thus sets up a two-part inquiry: (1) do federal common law principles apply to the DMV proceeding and, if so, (2) does that proceeding preclude Plaintiff's claims as a matter of New York law.

The Supreme Court addressed one aspect of this issue in *Elliot*. It held, in the context of § 1983 claims, that adequately litigated findings of *fact* by state administrative agencies "acting in a judicial capacity" are entitled to preclusive effect. *See B & B Hardware, Inc. v. Hargis*

7

*Indus., Inc.*, 575 U.S. 138, 148 (2015) (quoting *Elliot*, 478 U.S. at 797–98); *Leventhal*, 266 F.3d at 72 n.3 (same).[4]  Yet, as relevant here, *Elliot* "speaks only in terms of issue preclusion," and a subset of issue preclusion at that.  *See Wiercinski v. Mangia 57, Inc.*, No. 09-CV-4413, 2010 WL 2681168, at *4 (E.D.N.Y. July 2, 2010).  "Neither the Supreme Court nor [the Second Circuit] has decided whether preclusion would similarly apply . . . for an issue of law or a mixed question of law and fact resolved by [a] state agency."  *Leventhal*, 266 F.3d at 72 n.3.  Nor has either court addressed how *claim* preclusion applies to similar judgments.  *Wiercinski*, 2010 WL 2681168, at *4.

Following *Elliot*, the Circuits have adopted differing approaches as to whether federal common law requires application of state claim preclusion rules.  *Celotto v. Ryan*, No. 16-CV-1038, 2021 WL 2910290, at *2 (W.D.N.Y. July 12, 2021) (noting split in civil rights context and that "the Second Circuit has not taken a side"); *see also Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) ("Currently, this circuit has not taken a position regarding the split in the circuits as to whether to give preclusive effect to the unreviewed legal determinations of state administrative decisions.").  The Fourth, Fifth, and Eleventh Circuits have held that "at least in the context of [§] 1983 suits, the federal common law of preclusion does not require application of state claim preclusion rules to unreviewed state administrative decisions."  *Gjellum v. City of Birmingham*, 829 F.2d 1056, 1065 (11th Cir. 1987); *Dionne v. Mayor & City Council of Baltimore*, 40 F.3d 677, 681–82 (4th Cir. 1994) (adopting *Gjellum*); *see also Frazier v. King*, 873 F.2d 820, 824 (5th

---

[4] *Elliott* separately held that state administrative findings do not preclude Title VII claims.  *See Elliott*, 478 U.S. at 796.  It based that finding on the text of 42 U.S.C. § 2000e–5(b) which set out how the EEOC should evaluate findings by state or local authorities.  Given that explicit statement, *Elliott* concluded that "it would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court."  *Elliott*, 478 U.S. at 795; *see also Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 110–11, (1991) (extending similar rationale to age discrimination claims).

Cir. 1989) (agreeing with *Gjellum* but declining to decide "which forums' rules of claim preclusion apply" (italics omitted)).  The Seventh Circuit has adopted largely the same position. *See Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857, 865 (7th Cir. 1996) ("The federal courts will not decline to hear claims pertaining to federal rights solely on the basis of state res judicata principles."), *overruled on other grounds*, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009).  And the Third Circuit addressed a related question in *Edmundson v. Borough of Kennett Square*, where it applied federal common law considerations including "the rights at stake, as well as the power and relative adequacy of state procedures," and held that an unreviewed agency finding of law could not preclude a plaintiff's First Amendment claim in federal court. 4 F.3d 186, 193 (3d Cir. 1993).

The Eighth and Ninth Circuits, by contrast, have accorded preclusive effect to unreviewed agency determinations of law, although it is not entirely clear if these decisions extend to claim preclusion.  *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1033 (9th Cir. 1994), *as amended* (Dec. 27, 1994) ("[W]hen an administrative proceeding meets [certain fairness] requirements, 'it may rise to the level of a "judicial proceeding" entitled to preclusive effect by section 1738.'" (quoting *Plaine v. McCabe*, 797 F.2d 713, 719 (9th Cir. 1986)); *Plough By & Through Plough v. W. Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 517 (8th Cir. 1995) ("The federal district court was bound to give the State Board's decision the same preclusive effect as the state courts would.").  *But see Peery v. Brakke*, 826 F.2d 740, 746 (8th Cir. 1987) (holding "issue preclusion under *Elliott* does not apply in any meaningful sense to" a state agency finding "of law").  Those decisions, to the extent they control in the claim preclusion context, have been criticized by courts in this District for improperly extending *Elliot*.  *Levich v. Liberty Cent. Sch. Dist.*, 361 F. Supp. 2d 151, 161 (S.D.N.Y. 2004) (finding Ninth Circuit precedent "ignor[ed] the

Supreme Court's very specific use of the word 'factfinding' throughout the [*Elliot*] opinion."); *Pappas v. Giuliani*, 118 F. Supp. 2d 433, 442 (S.D.N.Y. 2000) (declining to accord issue preclusive effect to unreviewed legal determination), *aff'd*, 290 F.3d 143 (2d Cir. 2002); *see also Casler v. W. Irondequoit Sch. Dist.*, 563 F. Supp. 3d 60, 67–68 (W.D.N.Y. 2021) (collecting cases holding unreviewed legal determinations lack collateral estoppel effect in federal court).

To sum up then, the weight of authority indicates that, at least where certain federal rights are at stake, federal common law does not give claim preclusive effect to unreviewed state agency judgments. Defendant does not contest that conclusion, per se. Instead, it argues that this proposition is limited to § 1983 suits. (Def's Supp. Mem. 4–5; Def's Supp. Reply 3–4.) The Court thus examines whether this caselaw applies to the rights at stake here first with respect to Plaintiff's federal claim and then its state law claims.

The principles underlying the preclusion doctrines are well-established: they protect against "the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (alterations adopted) (citation omitted); *Schwartz v. HSBC Bank USA, N.A.*, 160 F. Supp. 3d 666, 674 (S.D.N.Y. 2016) (same). When an agency decision is in the mix, a court must also consider "the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures." *See Astoria*, 501 U.S. at 110. The doctrines are not the same, however. "[C]laim preclusion is the much more drastic doctrine, for it achieves these goals by forcing a plaintiff to raise all possible theories of recovery and to demand all desired remedies in one proceeding at peril of losing all not raised in it." *Dionne*, 40 F.3d at 683. As a result, federal courts are highly reluctant to apply claim preclusion unless a plaintiff was able to advance its "'same transaction' claims in a single unitary proceeding." *Id.*

10

(citing Restatement (Second) of Judgments § 26 cmt. c). With that in mind, the Court considers whether claim preclusion in this context "would be consistent with the traditional principles of res judicata and with the policies underlying the Full Faith and Credit Clause." *Id.* at 682–83.

First, the administrative proceeding at issue here "was one of quite limited substantive and remedial scope." *Id* at 683. The Parties agree that the DMV's subject matter jurisdiction is limited to claims arising under the Dealer Act and that it could not award Plaintiff the damages it seeks in this Action. N.Y. Veh. & Traf. L. §§ 471-a(a), (b) (providing DMV may hear a request for "a specific remedy other than damages"). (*See* Pl's Mem. 8–9.) Moreover, although the Court does not doubt that the DMV is "highly competent" when it comes to the Dealer Act, the Court is skeptical that its officials "have []either the training []or the experience" to adjudicate federal antitrust claims. *See Pappas*, 118 F. Supp. 2d at 442.

Second, and for the same reason, there is no risk of inconsistent judgments—the primary concern animating *Elliott*. *See Elliott*, 478 U.S. at 799 (explaining full faith and credit principles are meant to "act as a nationally unifying force"). The DMV cannot consider Plaintiff's antitrust claim, and a follow-on federal suit would therefore not trample on the state proceeding.

Third, a rule precluding Plaintiff's antitrust claim would not ease the burden of federal courts. If a rule to that effect were in place, "plaintiffs might well choose to bypass the administrative agency and go directly to federal or state court" to pursue their much more valuable claims for damages. *Dionne*, 40 F.3d at 684. In that event, the burden on courts would "rise, instead of fall" and plaintiffs would be discouraged from pursuing the "cheaper and more efficient" remedies provided by state law. *Id.*; *see also Frazier*, 873 F.2d at 824 (finding that a rule of claim preclusion "would encourage plaintiffs to bypass administrative proceedings in order to preserve their [federal] claims"). Moreover, it is difficult to understand how "any such

11

interests justify" "precluding litigation of issues not previously adjudicated." *See Gjellum*, 829 F.2d at 1069.

Defendant's contrary arguments are unpersuasive. Its claim that the "vast majority" of relevant caselaw arises in the issue preclusion context is simply incorrect. (*See* Def's Supp. Reply 2.) The three circuit opinions on which the Court relies—*Dionne*, *Gjellum*, and *Frasier*—all discuss the applicability of *Elliott* in claim preclusion cases. And there is good reason to extend those cases to other major federal statutes. (*See* Def's Supp. Reply 4–5.) Although Congress did not expressly address this question in enacting the Robinson-Patman Act, *see* 15 U.S.C. §§ 13, et seq., the federal interest in enforcing that statute weighs in Plaintiff's favor. Indeed, the Supreme Court has described the "federal interest in enforcement of the antitrust laws" as "familiar and substantial," *324 Liquor Corp. v. Duffy*, 479 U.S. 335, 350 (1987) (internal quotation marks omitted), and has gone as far as to say that those laws "are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms," *id*. (quoting *United States v. Topco Assocs., Inc*., 405 U.S. 596, 610 (1972)). The Parties do not point to anything in the Robinson-Patman Act's legislative history to suggest that Congress intended that "contrary to traditional claim preclusion principles, an adjudication in a state administrative tribunal of limited jurisdiction should preclude a later [] action in federal court." *See Dionne*, 40 F.3d at 684. Accordingly, federal common law does not accord preclusive effect to the DMV Proceeding as to Plaintiff's Robinson-Patman Act claim.

The story differs with respect to Plaintiff's state Dealer Act claims. As FCA observes, the decisions declining to apply state claim preclusion law are quite careful to limit their holdings to the specific federal statute at issue. *See, e.g.*, *Gjellum*, 829 F.2d at 1065 (holding

12

claim preclusion inapplicable "at least in the context of [§] 1983 suits"). To the extent special federal-rights concerns support that rationale, they drop away when there are only state-law claims in the picture. Next, although the DMV only offers injunctive relief, Dealer Act claims are the DMV's core substantive competency, and it is thus well equipped to adjudicate those claims in the first instance. *See generally* N.Y. Veh. & Traf. L. § 471-a. All the traditional judicial economy concerns apply as well. Under Plaintiff's proposed rule, if it lost before the DMV, nothing would "bar[] [P]laintiff from relitigating" the same Dealer Act violation in federal court. *See Mamot v. Cuomo*, No. 21-CV-6732, 2021 WL 5166365, at *2 (S.D.N.Y. Nov. 5, 2021) (quoting *Marcel Fashions Grp. Inc. v. Lucky Brand Dungarees*, Inc., 898 F.3d 232, 236–37 (2d Cir. 2018)). Finally, failure to preclude these claims risks creating inconsistent judgments and may result in two jurisdictions applying different rules to the same judgment, which is exactly what *Elliott* directs courts to avoid.

The Court will thus consider the preclusive effect of the DMV Proceeding under New York law as to Plaintiff's state-law claims.

### 2. State Law

"Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021) (alteration adopted and internal quotation marks omitted) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000)). New York employs a transactional approach under which "the claim preclusion rule extends beyond attempts to relitigate identical claims . . . [to] *all other claims arising out of the same transaction or series of transactions*." *Id*. (emphasis in original) (quoting *Simmons v. Trans Express Inc.* (*Simmons II*), 170 N.E.3d 733 (N.Y. 2021)). Specifically, FCA must demonstrate that Plaintiff's claims (1) "could have been raised in a prior proceeding"; (2)

13

"resulted in a final judgment [] on the merits"; and (3) arose out of the same series of transactions. *Borrani v. Nationstar Mortg. LLC*, No. 17-CV-9397, 2019 WL 1429982, at *10 (S.D.N.Y. Mar. 29, 2019) (quoting *L.A.M. Recovery, Inc. v. Dep't of Consumer Affairs*, 345 F. Supp. 2d 405, 409–10 (S.D.N.Y. 2004)).

Plaintiff does not dispute that New York law applies "res judicata . . . to [] quasi-judicial determinations of administrative agencies," *United States v. East River Housing Corp.*, 90 F. Supp. 3d 118, 140 (S.D.N.Y. 2015) (internal quotation marks omitted) and that the DMV rendered a final merits judgment in the underlying proceeding.  (Def's Mem. 8; *see generally* Pl's Mem.)  It instead argues that the DMV's inability to award damages renders the doctrine inapplicable, (Pl's Mem. 7–9, 11), and that its Dealer Act and contract claims were not part of the transaction that the DMV examined, (*id*. at 6–7, 9–11).

Res judicata generally does not apply "when 'the initial forum did not have the power to award the full measure of relief sought in the later litigation.'"  *Twersky v. Yeshiva Univ.*, 112 F. Supp. 3d 173, 180 (S.D.N.Y. 2015) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *see also* Restatement (Second) of Judgments § 26 cmt. c (explaining res judicata is "predicated on the assumption" that the initial jurisdiction "put no formal barriers in the way" of a plaintiff's "entire claim").  Like many legal rules, however, there is an exception to the exception.  As explained by the Second Circuit in *Burgos*, "where a plaintiff was precluded from recovering damages in the initial action by formal jurisdictional or statutory barriers, *not by plaintiff's choice*, a subsequent action for damages will not normally be barred by res judicata . . . ."  *Burgos*, 14 F.3d at 790 (emphasis added).  The Restatement of Judgments, which *Burgos* quotes in the immediately preceding sentence, provides additional clarity:

> *When the jurisdiction of the court is limited*.  The rule stated in this Section as to splitting a claim is applicable although the first action is brought in a court which

14

> has no jurisdiction to give a judgment for more than a designated amount. . . . The same considerations apply when the first action is brought in a court which has jurisdiction to redress an invasion of a certain interest of the plaintiff, but not another, and the action goes to judgment on the merits. *The plaintiff, having voluntarily brought his action in a court which can grant him only limited relief, cannot insist upon maintaining another action on the claim.*

Restatement (Second) of Judgments § 24 cmt. g (citations omitted) (emphasis added); *see also Waldman*, 207 F.3d at 108 (applying § 24 to determine the scope of a claim). That same logic applies here. The Dealer Act cause of action provision contemplates two paths: a plaintiff may "request an adjudicatory proceeding [before the DMV], *or in lieu thereof*, sue for, and have, injunctive relief and damages in any court of the state" with jurisdiction. N.Y. Veh. & Traf. L. § 469(1). When it initiated the DMV proceeding, Plaintiff *chose* the first path—a limited agency proceeding—even though a court of general jurisdiction was available. Res judicata thus applies to bar its Dealer Act and contract claims.

Plaintiff cites multiple cases stating the limited-jurisdiction exception to res judicata, but none that grapples with the distinction explained above. (*See* Pl's Mem. 7–8 (citing *Lyons v. Lancer Ins. Co.*, No. 07-CV-7095, 2008 WL 4525542, at *5 (S.D.N.Y. Sept. 30, 2008); *Davidson v. Capuano,* 792 F.2d 275, 278 (2d Cir. 1986); *Antonsen v. Ward,* 943 F.2d 198, 201 (2d Cir. 1991); Pl's Supp. Mem. 1 (citing *Celotto*, 2021 WL 2910290, at *1).)[5] The cases that do apply the

---

[5] None of these cases cites *Burgos*' (or the Restatement's) "plaintiff's choice" language, and they are otherwise distinguishable. The plaintiff in *Lyons* had not yet satisfied "certain [contractual] prerequisites" to bringing her purportedly-barred claim at the time of the state proceeding and thus could not have raised that claim in the state case even if she wanted to. *See Lyons*, 2008 WL 4525542, at *5 (declining to apply res judicata on that basis). As for *Celotto*, Plaintiff appears to cite dicta that "[r]es judicata will not apply, for example, *if* the Division of Human Rights could not have decided Celotto's equal protection claim." (Pl's Supp. Mem. 9 (quoting *Celotto*, 2021 WL 2910290, at *4 (emphasis added)).) The court there did not consider whether the plaintiff had a choice to consolidate all her claims in a single forum. *See generally*, *Celotto*, 2021 WL 2910290. *Davidson* and *Antonsen*, for their part, cited a separate and distinct rationale for putting res judicata aside. Those cases examined the preclusive effect of Article 78 proceedings and declined to bar claims due not only to limitations on Article 78 remedies but also to the "role and purposes of the 'special proceeding' in New York procedure." *See*

Plaintiff's-choice rule adopt the exact same approach that the Court does here.  In *Car Cash of New York, Inc. v. Big Bucks Auto, Inc.*, No. 06-CV-1574, 2008 WL 11515729, at *4 (S.D.N.Y. Feb. 25, 2008), the plaintiff initially brought suit in New York Civil Court, which "lacks general equitable jurisdiction," and argued that limitation rendered res judicata inapplicable.  *Id*.  Applying *Burgos*, the court determined that the doctrine did apply because the plaintiff "could have brought the prior action in the Supreme Court but instead *chose* to file suit in the Civil Court."  *Id*. & n.1 (emphasis added) (citing Restatement (Second) of Judgments, § 24, cmt. g).  It is immaterial that Car Cash applied to bar "a subsequent lawsuit for the very same claim."  (*See* Pl's Mem. 10.)  The same rule applied to claims that "could have been raised" in the prior action as well.  *Car Cash*, 2008 WL 11515729, at *3; *see also Humphrey v. Tharaldson Enters., Inc.*, 95 F.3d 624, 626 (7th Cir. 1996) (holding that unreviewed state labor department decision barred related claims in federal court and reasoning that "as long as there existed a tribunal before which Humphrey could have consolidated all his claims in a single lawsuit, the principles of claim preclusion bar his current federal suit"); *Sullinger v. Sullinger*, 849 F. App'x 513, 520 (6th Cir. 2021) (holding limited-jurisdiction divorce proceeding precluded related tort claim in federal court).

Plaintiff also objects on what amounts to fairness grounds.  (*See* Pl's Mem. 8–9.)  It implies that it is inequitable to apply preclusion where Plaintiff simply availed itself of "a

---

*Davidson*, 792 F.2d at 280; *Antonsen*, 943 F.2d at 204; *see also Giano v. Flood*, 803 F.2d 769, 771 (2d Cir. 1986) ("In *Davidson* . . . we focused our inquiry on both the measure of damages available in an Article 78 proceeding and the role and purpose of the 'special proceeding' in New York.").  Although it is not cited in those cases, the Restatement contains a separate res judicata exception for exactly that situation, explaining that "it may appear from a consideration of the entire statutory scheme that litigation, which on ordinary analysis might be considered objectionable as repetitive, is [] intended to be permitted."  Restatement (Second) of Judgments § 26, cmt. e.  But that exception does not apply here, as the statute expressly contemplates Plaintiff's ability to sue in a court of general jurisdiction instead of the DMV.

16

quicker and cheaper administrative alternative to long, drawn out, and expensive litigation." (*Id.*) But that is precisely the point. Plaintiff chose an opportunity for quick relief when it could have brought all its claims in a single unified proceeding.[6] It must now live with the consequences. *Galtieri v. N.Y.C. Police Pension Fund*, No. 12-CV-1159, 2014 WL 4593927, at *16 (S.D.N.Y. Sept. 15, 2014) ("That [Plaintiff] might have chosen—for strategic reasons—not to assert this alleged right until now does not alter the applicability of res judicata."); *see also* 18 Fed. Prac. & Proc. Juris. § 4412 (Wright & Miller) (3d ed.) ("Difficult choices must be made, however, if the plaintiff knowingly chose a court of more limited jurisdiction when a court of broader jurisdiction was available . . . .").

Plaintiff's Dealer Act and contract counts are also part of the same "claim." To assess whether claims arise out of the "same transaction," New York courts "analyze whether the claims turn on facts that 'are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Simmons II*, 170 N.E.3d at 736–37 (quoting *Xiao Yang Chen v. Fischer*, 843 N.E.2d 723, 725 (N.Y. 2005)); *see also Jean-Gilles v. County of Rockland*, 463 F. Supp. 2d 437, 453 (S.D.N.Y. 2006) (same).

The DMV Proceeding focused on MSR, a metric FCA used to measure sales objectives. (*See* Pl's Mem. 6; *see generally* DMV Pet.) Specifically, it examined the legality of that metric under the Dealer Act, including whether it properly accounted for local market forces. (*See, e.g.*, DMV Pet. ¶ 4.) The facts giving rise to that particular claim, however, mirror those here. Plaintiff alleged—as it does here—that FCA "rather than merely failing to take into account local

---

[6] Although it is not relevant to the res judicata analysis, the Court notes that Plaintiff repeatedly recognized the jurisdictional limitations of the DMV and argued in favor of proceeding there anyway. (*See* Gansborg Decl., Ex. C at 24–25, 26.)

17

market forces" went further "and encouraged unlawful brokering in Larchmont's market by giving favored treatment to its high-volume brokering dealers, including unfair allocation of extra units." (DMV Pet. ¶ 1.) And similar allegations appear throughout the DMV Petition. (*See id*. ¶¶ 48, 51, 57, 59.) Moreover, Plaintiff appeared to view these issues as forming a conventional trial unit. In its pre-suit demand letter, attached as an exhibit to the DMV Petition, Plaintiff lists both the Dealer Act claim related to the MSR *and* its claims focused on FCA's preferential brokering activities. (DMV Pet. Ex. C, at 4; *see generally id*., Ex. F (letter of intent detailing issues regarding "MSR and Brokering").) At minimum, this is a situation where "facts essential to the [instant claim] were present in the first." *See Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted).

Plaintiff in response suggests that res judicata nevertheless does not apply because the instant Complaint relates to "different programs governed by different statutes." (Pl's Mem. 7.) But that limitation is not grounded in the law. Parties are "barred from relitigating not only matters actually litigated in a [proceeding] but also any matters that could have been litigated in that action," even if they arise under different bodies of law. *Dash v. Bank of Am. Corp*., No. 18-CV-4807, 2019 WL 1780140, at *8 (S.D.N.Y. Apr. 23, 2019) (alteration adopted) (quoting *West v. Ruff*, 961 F.2d 1064, 1065 (2d Cir. 1992)) (barring Fair Debt Collecting practices Act claim based on prior Fair Credit Reporting Act litigation); *Hyman v. Cornell Univ*., No. 15-CV-792, 2017 WL 1194231, at *8 (N.D.N.Y. Mar. 30, 2017) (applying res judicata to dismiss a First Amendment claim where "[t]he facts needed to support" it "require proof of the same facts that [the plaintiff] alleged" in prior litigation on the plaintiff's Title IX discrimination claim). Plaintiff's contract and Dealer Act claims, to the extent they arise under different authority, are based on virtually identical facts. (*See generally* Compl.)

18

Finally, Plaintiff also notes that res judicata generally does not bar claims based on conduct occurring after an initial proceeding that can "support a cause of action on its own." (Pl's Mem. 12 (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 500 (2d Cir. 2014)).) That said, claim preclusion still applies "where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim." *McCluskey v. Roberts*, No. 19-CV-2386, 2020 WL 6449234, at *5 (E.D.N.Y. Nov. 3, 2020) (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 384 (2d Cir. 2003)); *see also TAL Properties of Pomona, LLC v. Village of Pomona*, No. 22-CV-1826, 2023 WL 2924571, at *2 (2d Cir. Apr. 13, 2023) (summary order) (same). On its face, the Complaint does not distinguish between pre- and post-DMV proceeding claims. (*See generally* Compl.) And although Plaintiff asserts that "each act of unlawful price discrimination" supports its own cause of action, (Pl's Mem. 13), it does not actually cite an instance of such discrimination that occurred after the DMV Proceeding. Accordingly, "it is simply not plausible to characterize [Plaintiff's] claim as one based in any significant way upon [] post-[DMV Proceeding] facts." *See Waldman*, 207 F.3d at 113.

Plaintiff's Dealer Act and contract claims are therefore barred by res judicata.[7]

---

[7] For this reason, the Court need not consider Defendant's additional argument that Plaintiff failed to state a claim for breach of the covenant of good faith and fair dealing. (Def's Mem. 16–18.)

## III.  Conclusion

For the foregoing reasons, Defendant's Motion is granted in part and denied in part.  The Clerk of Court is respectfully directed to terminate the pending motion at Dkt. No. 28.  The Court will hold a telephonic status conference on March 27, 2024, at 10:30 AM.

SO ORDERED.

Dated:   March 5, 2024
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge